NANNIE G. KAUFMAN, Respondent, *v.* EMPIRE TRUST COMPANY, Appellant, and THE ADAMS EXPRESS COMPANY et al., Respondents.

(Argued December 8, 1932; decided January 10, 1933.)

*Stuart McNamara* and *Charles Green Smith* for appellant. Plaintiff's application, followed by full allotment of stock to her with notice to her, established a binding contract and fixed and limited her rights. She could not vary its terms through oral request to the defendant-appellant as her agent to obtain stock for her to which she was not entitled. (*Bloxam's Case*, 4 DeG., J. & S. 447; *Adams Case*, 13 Eq. 474; *Fleischman* v. *Furgueson*, 223 N. Y. 235; *Cream of Wheat Co.* v. *Crist Co.*, 222 N. Y. 487; *Poel* v. *Brunswick-Balke-Collender Co.*, 216 N. Y. 310; *Sattler* v. *Hallick*, 160 N. Y. 291.) There was no conversion; at most, there was only an omission by an agent to carry out oral instructions which varied from plaintiff's signed written instructions. (*Belger* v. *Dinsmore*, 51 N. Y. 166; *White* v. *Ashton*, 51 N. Y. 280; *Hinckley* v. *N. Y. C. & H. R. R. R. Co.*, 56 N. Y. 429; *Meyer* v. *Lathrop*, 73 N. Y. 315; *Zimmer* v. *N. Y. C. R. R. Co.*, 137 N. Y. 460; *Greenwald* v. *Barrett*, 199 N. Y. 171; *Jonasson* v. *Weir*, 130 App. Div. 528; *Cohen* v. *Morris European & American Express Co.*, 151 App. Div. 672; *Sims* v. *Farson*, 162 App. Div. 426; 220 N. Y. 710; *Bates* v. *Weir*, 121 App. Div. 275; *Springer* v. *Wescott*, 78 Hun, 365; *Mitchell* v. *Lath*, 247 N. Y. 377; *Wamsley* v. *Atlas S. S. Co.*, 168 N. Y. 533; *McCoy* v. *American Express Co.*, 253 N. Y. 477; *Industrial & General Trust Co.* v. *Todd*, 170 N. Y. 233; *Minneapolis Trust Co.* v. *Mather*, 181 N. Y. 205; *Meyer* v. *Price*, 250 N. Y. 370; *Employers Fire Ins. Co.* v. *Cotten*, 245 N. Y. 102.)

*David Michelsohn* and *Milton Dammann* for plaintiff-respondent. The plaintiff properly sued for conversion. (*Pierpont* v. *Hoyt*, 260 N. Y. 26; *Industrial & General Trust Co.* v. *Todd*, 170 N. Y. 233; *Minneapolis Trust Co.* v. *Mather*, 181 N. Y. 205; *Scott* v. *Rogers*, 31 N. Y. 678.)

*George L. Trumbull* and *David H. Houghtaling* for The Chase National Bank of the City of New York, defendant-respondent. The facts proved at the trial absolve the

defendant bank from liability. (*M' Nitt* v. *Clark,* 7 Johns. 465; *Storm* v. *Rosenthal,* 156 App. Div. 544; *Trustees of Columbia University* v. *Kalvin,* 132 Misc. Rep. 601; 225 App. Div. 653; *Atlantic Coast Line R. R. Co.* v. *Hollowell,* 2 Fed. Rep. [2d] 674; *Virginia Export Coal Co.* v. *Rowland Land Co.,* 131 S. E. Rep. 253; *Kramer* v. *Ewing,* 61 Pac. Rep. 1064; *Phillips* v. *Cornelius,* 28 So. Rep. 871; *Ellison* v. *Boyd,* 125 S. E. Rep. 493; *Bockelman* v. *Spires,* 110 Neb. 234; *Duerson* v. *Bellows,* 1 Blackf. 217; *Collins* v. *Whigham,* 58 Ala. 438; *German Ins. Co.* v. *Hazard Bank,* 126 Ky. 730.)

*Leonard P. Moore* for The Adams Express Company, defendant-respondent.

CRANE, J.   The parties by a stipulation established the important facts in this case which depends upon the interpretation of written documents.   The plaintiff was the holder of seventy-two shares of the common stock of the Adams Express Company.   That company, which had only one class of stock, was authorized by vote of the stockholders to issue one hundred thousand shares of five per cent cumulative preferred stock, of the par value of one hundred dollars.   The plaintiff consented in writing to this amendment in the stock formation of the company.   On October 3rd the Adams Express Company by a letter notified the stockholders, including the plaintiff, of the adoption of the change, and stated the privileges offered to the stockholders for the exchange of their stock, common for preferred.   The scheme thus stated, consisted in the exchange of one and seven-tenths shares of the preferred stock for one share of existing stock, " but, subject, of course, to proportionate allotment among the applicants therefor, in the event of the receipt of applications for such exchange in excess of one hundred thousand (100,000) shares of Preferred Stock."   The stockholders were given the right to surrender " any part or all of their stock."   This fact must be kept in mind.

The plaintiff, having seventy-two shares, was not obliged to surrender all or none; she could surrender for exchange all or any part of the seventy-two shares. Upon the surrender of the shares, the stockholder was to receive (a) a temporary certificate of five per cent cumulative preferred stock, in the ratio of one and seven-tenths (1–7/10) preferred for one share of existing stock, "but not in excess of fifty-eight (58) per cent of the total number of shares in the name of the applicant on the books of the Company;" (c) a certificate of deposit for the remainder of the shares so deposited. The plaintiff, therefore, upon the surrender of her seventy-two shares for exchange would be entitled to the proportionate number of preferred stock up to fifty-eight per cent of her total holdings. The certificate of deposit had reference to the shares surrendered for exchange over and above this fifty-eight per cent. The company was authorized to make allotments over the fifty-eight per cent according to the demands for the preferred stock. In other words, if the stockholders desired more preferred stock than was sufficient to go around, it had to be allotted to them proportionately. The company could not tell what the demands would be in response to this letter until the surrender by the stockholders of their stock for exchange. Accordingly, this letter of October 3rd contained the following: " Final allotment among the applicants for Preferred Stock will be made on October 17, 1927. Upon the making of such allotment, the holders of the Certificates of Deposit, by the surrender of the same duly endorsed for blank delivery, will be entitled to receive any additional shares of Five Per Cent Cumulative Preferred Stock and Scrip Stock for fractional shares involved, in the aforesaid ratio, allotted to the shares represented by said Certificates of Deposit pursuant to this application. * * * Stockholders are entitled to convert 58% of their existing shares into Preferred Stock. They may apply for the exchange of any part or all of their existing shares, but if all the stock-

holders apply for the conversion of all their shares, allotment in excess of 58% of each stockholder's shares, of necessity, will have to be cut down proportionately."

The plaintiff, having consented in writing, as a stockholder, to this proposed change, upon the receipt of the letter of October 3, 1927, surrendered all of her stock holdings, seventy-two shares, to exchange for preferred stock in the proportion stated. Her application for the exchange read: " Application is hereby made for the exchange of 72 of the foregoing shares for shares of Five Per Cent Cumulative Preferred Stock of The Adams Express Company, upon the basis of one and seven-tenths (1–7 /10) shares of Preferred Stock for one share of existing stock, but, subject, of course, to proportionate allotment among the applicants therefor, in the event of the receipt of applications for such exchange in excess of One hundred thousand (100,000) shares of Preferred Stock. * * *

" It is further understood that final allotment among the applicants for Preferred Stock will be made on October 17, 1927, and that after the making of such allotment, the holder of the aforesaid Certificate of Deposit, upon the surrender of the same duly endorsed for blank delivery, will be entitled to receive any additional shares of Five Per Cent Cumulative Preferred Stock and Scrip Stock for fractional shares involved, in the aforesaid ratio, allotted to the shares represented by said Certificate of Depoait pursuant to application. In addition, upon the surrender of said Certificate of Deposit duly endorsed as aforesaid, the holder thereof will be entitled to receive Temporary Certificates of new Common Stock equal to the number of any remaining shares represented by the Certificate of Deposit that are not exchanged for Preferred Stock."

The plaintiff received temporary certificates for her fifty-eight per cent allotment and the certificate of deposit in the form above mentioned. Later, and on October 17th, by resolution adopted by the board of

managers of the Adams Express Company, a full allotment, to the extent of the shares applied.for, was awarded to all the shareholders who had filed applications, as there had not been a sufficient demand for the preferred stock to require fractional apportionment. On October 25, 1927, the Adams Express Company, through its agent, The Chase National Bank, notified the plaintiff, together with other stockholders, of said action, in a letter reading as follows: " We have been advised by the Adams Express Company that holders of Certificates of Deposit representing shares of common stock have been allotted preferred stock to the extent of 100% of their applications. Holders of such Certificates of Deposit may now obtain the preferred stock to which they are entitled upon surrender, at the Trust Department of the Undersigned, of their Certificates of Deposit properly endorsed and witnessed."

The plaintiff surrendered her temporary certificates and the certificate of deposit to her bank, the Empire Trust Company, and asked it, assuming her story to be true, to get her common stock on her certificate of deposit. As preferred stock had been allotted to her for the full amount of her seventy-two shares, in the proportion of one and seven-tenths preferred shares to one of common, the Empire Trust received the preferred shares from the Chase National Bank, which the plaintiff refused to accept. Claiming that the defendant Empire Trust Company had converted her stock, she brought this action for damages, and has recovered a judgment upon that theory.

That the plaintiff was entitled to fifty-eight per cent of her holdings of preferred stock, and bound to take it, is not questioned. Her claim is in reference to the certificate of deposit. She claims that under the plan she could elect, at any time up to the surrender of her certificate of deposit, whether she wanted the balance of her seventy-two shares over the fifty-eight per cent, in

common or in preferred stock. We can find nothing in the options given to the plaintiff by the Adams Express Company or the Chase National Bank which afforded her any such election. The proposal has been outlined above, and by it the company gave the plaintiff the right to surrender any or all of her stock, for which she was to receive fifty-eight per cent of her holding in preferred stock. As to the balance she got a certificate of deposit which, by October 17, 1927, was good for as much of the preferred stock as could be given to the plaintiff, measured and apportioned according to the demand therefor. This was the proposal held out to the plaintiff. She accepted it. Whatever may have been her rights prior to October 17, 1927, with reference to the certificate of deposit, we are not called upon to state, as on that day the Adams Express Company, acting upon her acceptance and written request, allotted to her preferred stock for all of her holdings, and so notified the plaintiff in writing.

We have here a proposal acted upon, accepted and carried out. It was too late after the allotment of October 17th for the plaintiff to change her mind. We find nothing ambiguous or confusing in the letters and communications to the plaintiff, as a stockholder, beyond the complications and difficulties arising out of language used to explain any reorganization or rearrangement of capital stock. The plaintiff received what she asked for and agreed to take.

The judgment against the Empire Trust Company upon the theory of conversion, therefore, is improper and must be reversed.

The judgment of the Appellate Division and that of the Trial Term should be reversed, and the complaint dismissed, with costs in all courts.

POUND, Ch. J., LEHMAN, KELLOGG, O'BRIEN and CROUCH, JJ., concur; HUBBS, J., not sitting.

Judgments reversed, etc.